IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL CASE NO. |
| v. | 1:14-CR-00024-AT-JFK |
| ISAIAH JERNIGAN (1),<br>MARIE ST. VIL (3),<br>BRIANNE MARCELIN (4), | |
| Defendants. | |

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court is Defendant Isaiah Jernigan's motion [Doc. 51] to dismiss the indictment and motions [Docs. 53 and 58] to suppress identification testimony. The Government responded opposing the motions and contending that, as to the motions to suppress identification evidence, an evidentiary hearing was not required. [Doc. 62]. Although provided with the opportunity to file a reply brief in support of his motions [Doc. 54 and Docket Entry dated January 27, 2015], Defendant did not reply to the arguments presented by the Government. For the reasons stated herein, the court **RECOMMENDS** that Defendant's motions to dismiss and to suppress be **DENIED**.

AO 72A
(Rev.8/82)

## Motion to Dismiss Indictment

Defendant contends that the indictment should be dismissed as being void for vagueness because one of the alleged victims (JV #2) of the conspiracy charged in Count One and of the substantive offense charged in Count Three was alleged to be 17 years of age at the time of the offense. According to Defendant, the definition of a minor under both federal and Georgia statutes is conflicting leading to confusion as to whether JV #2 falls within the scope of the charged offenses. Defendant further asserts that his due process rights are violated by the charge in Count Three because the charge criminalizes sexual conduct involving JV #2, who was over the age of 16, which in Georgia is the age of consent for sexual activity. [Doc. 51]. Defendant cites to no legal authority in support of his motion. The Government responds arguing that the statute criminalizing Defendant's alleged conduct does not reference the word "minor" and that Defendant is not charged with violating any state criminal statute, and accordingly, his reliance on statutes defining "minor" or the age of consent in the State of Georgia is misplaced. [Doc. 62 at 16-19]. The Government is correct.

### I. Indictment

A federal grand jury sitting in this district returned a four count indictment against Defendant Jernigan and three co-Defendants, Darren Williamson (who

2

remains a fugitive), Marie St. Vil and Brianne Marcelin, for violations of 18 U.S.C. §§ 1591(a) and (b) and 1594(c), involving the sex trafficking of juveniles. In Count One, Defendants are charged with a conspiracy "to knowingly recruit, entice, harbor, transport, provide and obtain, by any means, juvenile girls and to benefit financially, and by receiving a thing of value from participation in a venture . . ., in and affecting interstate and foreign commerce," to engage in commercial sexual acts, said "juvenile girls" having "not obtained the age of 18 years[,]" as prohibited by 18 U.S.C. § 1591(a) and (b). [Doc. 1, Count One]. Count One further sets out the manner and means of committing the conspiracy and alleges various overt acts in furtherance of the conspiracy, all in violation of 18 U.S.C. § 1594(c). [Id.]. Those acts specifically identify three juvenile girls, JV #1 and JV #3, aged 15 at the time of the charged offenses, and JV #2, aged 17 at the time of the charged offenses. [Id.]. These three juveniles, as well as other unidentified juvenile girls, were solicited and recruited to engage in prostitution by Defendants, who - after taking sexually explicit photographs of the juvenile girls - posted advertisements on the internet seeking customers to have sex with the juvenile girls. Defendants then caused, for financial benefit to themselves, the juvenile girls to engage in commercial sexual activity. [Id.]. In Counts Two, Three and Four, Defendants are charged with, "in and affecting interstate

3

commerce," recruiting, enticing, harboring, transporting and obtaining JV #1, JV #2 and JV #3, respectively, all of whom had not obtained the age of 18, and causing them "to engage in commercial sex acts," and obtaining a benefit and thing of value from that venture, all in violation of 18 U.S.C. §§ 1591(a) and (b)(2).

Additional facts will be set forth as necessary during discussion of the motion to dismiss.

## II.   Discussion

"The void-for-vagueness doctrine requires that a penal statute 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" United States v. Marte, 356 F.3d 1336, 1342 (11th Cir. 2004) (citation omitted). Because Defendant is not raising First Amendment rights in his challenge to the statute, his vagueness challenge is "evaluated in the light of the facts of the case at hand." Id. The more important aspect of the vagueness doctrine is "the requirement that a legislature establish minimal guidelines to govern law enforcement." United States v. Fisher, 289 F.3d 1329, 1333 (11th Cir. 2002) (citations and internal quotation marks omitted). The statutes at issue in this case specifically

4

define the criminal conduct at issue and, likewise, do not violate the due process clause.

Section 1591 of title 18 provides in pertinent part:

(a)  Whoever knowingly-

(1) in or affecting interstate . . . commerce, . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which engaged in an act described in violation of paragraph (1),

knowing, or in reckless disregard of the fact, . . . that the person has not obtained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1951(a).  And § 1954 provides in pertinent part, "Whoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both."  18 U.S.C. § 1954(c).

The statute at issue specifically makes it a crime to conspire to or to knowingly recruit, entice, harbor and maintain a person that "has not attained the age of 18 years" who "will be caused to engage in a commercial sex act[.]"  18 U.S.C. § 1591(a).  The statutory provision makes no reference to the "person" being a minor, as defined either elsewhere in the federal code or in the laws of any state, including Georgia.  The

5

definitions of "minor" referenced by Defendant are immaterial given the specific age restriction set forth in this criminal statute. As the Eleventh Circuit Court of Appeals stated, "Th[e] language [in § 1591] gave [the defendant] 'fair notice' that his conduct was criminal." United States v. Mozie, 752 F.3d 1271, 1282-83 (11th Cir. 2014) (denying void for vagueness challenge to the statute's inclusion of "reckless disregard" language, found in § 1591(a), and "reasonable opportunity to observe" language, found in § 1591(c)).

In United States v. Wilson, 2010 WL 2991561 (S.D. Fla. July 27, 2010), denying a void for vagueness challenge focusing on language found in § 1591(c) as applied to the charged conspiracy, the district court stated that "the statute states plainly what it prohibits: Defendant must not have agreed to knowingly recruit, entice, harbor, transport, provide, obtain, or maintain an individual who was under the age of eighteen to engage in a commercial sex act, knowing or in reckless disregard of the fact that the person was under the age of eighteen, in and affecting interstate commerce." Id., at *9. Although not directly addressing the age of the juveniles falling within the scope of the statute, the district court's statement in Wilson is fully applicable here: "Nothing about what this statute proscribes is left to the imagination. Instead, the statute clearly articulates precisely what it prohibits." Id.

AO 72A
(Rev.8/82)

In this case, the indictment specifically alleges that the three identified juveniles, ages 15 and 17, had not obtained the age of 18 as required for Defendant to commit an offense under §§ 1591(a) and 1594(c). [Doc. 1]. The statutes charged are not void for vagueness. Likewise, Defendant's argument that the charge in Count Three involving JV #2, aged 17, violates his due process rights because in Georgia the age of sexual consent is 16 is meritless. The charged offenses do not incorporate or rely on violation of Georgia's criminal statutes. As the Government notes, sections 1591 and 1594 were promulgated based on Congress' authority to regulate activities, even purely local in nature, that substantially affect interstate commerce. [Doc. 62 at 18-19, citing United States v. Evans, 476 F.3d 1176, 1179 (11th Cir. 2007)]. As stated by the Eleventh Circuit Court of Appeals in Evans,

> Section 1591 was enacted as part of the Trafficking Victims Protection Act of 2000 ("TVPA"). . . . [T]he TVPA is part of a comprehensive regulatory scheme. The TVPA criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain. Congress recognized that human trafficking, particularly of women and children in the sex industry, "is a modern form of slavery, and it is the largest manifestation of slavery today."

476 F.3d at 1179 (citation omitted). Defendant's alleged conduct falls within the proscription of the statutes as charged, and his due process rights are not violated by the fact that the charged conduct might not also violate state criminal laws.

7

### III. Conclusion

For these reasons, the court **RECOMMENDS** that Defendant's motion [Doc. 51] to dismiss the indictment be **DENIED**.

### Motion to Suppress Identification Testimony

Defendant moves the court to hold an evidentiary hearing and to "suppress all identifications of" him at trial. [Doc. 53]. In support of that motion, Defendant initially stated that, as disclosed in discovery, "witnesses were shown individual photographs and asked to identify anyone they recognized" and "identified [Defendant] as one of the persons depicted in the photographs." [Id. at 1].[1] The court directed Defendant to perfect his motion to suppress stating grounds in support of his motion. In that supplemental motion, Defendant asserts that the witness KC was interviewed on August 6, 2013, provided with photographs apparently downloaded from the internet by the government agent on August 8, 2013, and "asked to look at

---

[1]Defendant also contends that suppression was required for the same reasons argued by his co-Defendant St. Vil in her motion to suppress identification evidence. [Id. 53 at 1]. However, Defendant St. Vil's perfected motion to suppress offers no grounds for the suppression of any out-of-court or in-court identification of Defendant Jernigan. Defendant St. Vil contended that the specific photographic array of six African-American women was unduly suggestive based on the nature of that array. [Doc. 52]. Defendant St. Vil's grounds for her now withdrawn motion to suppress are immaterial to the motion pending before the court.

all of the individuals in the photographs and identify anyone she recognized." [Doc. 58 at 1, Exhibits A and B].[2] The witness made notations on the photographs and initialed the identifications she made. [Id.]. Because he does not know how the witness examined photographs on August 6 which were not downloaded until August 8, Defendant states, "The answer may be easily explained by the agent or it may lead to other concerns about the suggestive nature of these photographic identifications" and a hearing should be held. [Id. at 1-2]. Defendant does not present any other basis, such as that the photographs themselves or how they were displayed were suggestive, for contending that the identifications were unduly suggestive and thereby could result in a substantial chance of an unreliable identification at trial.

In response, the Government contends that Defendant's understanding of the Exhibits is incorrect and that the witness KC[3] was shown on August 6, 2013, a redacted set of the photographs downloaded from the internet which was utilized for the identification. This set, Exhibit B to Defendant's motion, did not include the

---

[2] Defendant neglected to label the pages attached to the motion; however, the court understands the pages identified on the bottom right-hand side with REPORTS000417-REPORTS000421 to constitute Exhibit A and with REPORTS000423-REPORTS000427 to constitute Exhibit B.

[3] KC appears to be the juvenile girl identified in the indictment as JV #2. [Compare Doc. 1, Count One, ¶¶ 6(a)-(d), with Doc. 62 at 4-6].

9

Facebook text associated with the photographs. Then, on August 8, 2013, the agent downloaded the photographs with the accompanying text, Exhibit A. This set does not bear the witness' writing. [Doc. 62 at 6-8]. The Government argues that, because Defendant has failed to present any basis for finding the that the identification procedure was unduly suggestive, the court is not required to hold an evidentiary hearing. [Id. at 9-11, 13-16]. As noted, Defendant did not file a reply challenging the clarification provided by the Government regarding the exhibits nor presenting any further basis for finding that the out-of-court identifications by the witness were the result of an unduly suggestive procedure or for finding that any in-court identification would be unreliable.

**I.     Discussion**

"To violate due process, an identification procedure used by the police must be unnecessarily suggestive and create a substantial risk of misidentification." Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987) (citing Neil v. Biggers, 93 S. Ct. 375, 380-81 (1972)); and see Perry v. New Hampshire, 132 S. Ct. 716, 724 (2012) ("first, . . . due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary"). "Determining whether an identification is so unreliable as to violate due process requires [the court]

10

to answer two (2) questions: (1) whether the original identification procedure was unduly suggestive; and if so, (2) whether the procedure, given the totality of the circumstances, created a substantial risk of misidentification at trial." Marsden v. Moore, 847 F.2d 1536, 1545 (11th Cir. 1988); see also United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001) ("This court employs a two-step analysis in assessing the constitutionality of a trial court's decision to admit an out-of-court identification. . . . First, we must determine whether the original identification procedure was unduly suggestive. If we conclude that it was suggestive, we then must consider whether, under the totality of the circumstances, the identification was nonetheless reliable.") (citation omitted). If the identification procedure is not unduly suggestive, "that ends the inquiry." Williams v. Weldon, 826 F.2d 1018, 1021 (11th Cir. 1987). As the Supreme Court recently reiterated in Perry, "The Court adopted a judicial screen for reliability as a course preferable to a *per se* rule requiring exclusion of identification evidence whenever law enforcement officers employ an improper procedure. The due process check for reliability . . . comes into play only after the defendant establishes improper police conduct." 132 S. Ct. at 726; and see United States v. Elliot, 732 F.3d 1307, 1310 (11th Cir. 2013) ("when no improper law enforcement activity is involved, exclusion of an eyewitness identification is unnecessary"). Following the decision in

11

Perry, the district court in United States v. Henry, 939 F. Supp. 2d 1279 (N.D. Ga. 2013), stated, "The defendant has the burden of showing that the eyewitness identification was derived through 'impermissibly suggestive' means[,]" and "[o]nly after the defendant meets this burden must the government show the identification was reliable independent of the suggestive procedure." Id. at 1292 (citations omitted); and see United States v. Mustafa, 2012 WL 1904595, at *5 (N.D. Ga. April 12, 2012) (same), adopted by 2012 WL 1903255 (N.D. Ga. May 25, 2012).

If the procedure is unduly suggestive, the court must determine whether "the identification was nonetheless reliable." Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988). "This second stage involves consideration of five factors identified by the Supreme Court in Neil v. Biggers: opportunity to view, degree of attention, accuracy of the description, level of certainty, and length of time between the crime and the identification." Id. (citing Biggers, 93 S. Ct. at 382). "Under this analysis, 'reliability is the linchpin in determining the admissibility of identification testimony.'" Williams, 826 F.2d at 1021 (quoting Manson v. Brathwaite, 97 S. Ct. 2243, 2253 (1977)); and see Perry, 132 S. Ct. at 724-25 (same).

The same two-step process is used for determining the admissibility of both out-of-court and in-court identifications.[4] In deciding whether to admit an in-court identification, as noted by the Fourth Circuit Court of Appeals, the Supreme Court has stated "that an eyewitness identification at trial following a pretrial identification by photograph should only be suppressed when the photographic identification procedure is so impermissibly suggestive as to give rise to the very substantial likelihood of misidentification." United States v. Johnson, 114 F.3d 435, 441 (4th Cir. 1997) (citing Simmons v. United States, 88 S. Ct. 967, 971 (1968)); and see Hawkins v. Secretary, Florida Dep't of Corrections, 219 Fed. Appx. 904, 906 (11th Cir. 2007) ("'Where suggestive pretrial confrontations may have created a substantial likelihood of irreparable misidentification at trial, the core question is whether under the totality of the circumstances, the in-court identification was reliable.'") (quoting Jones v. Newsome, 846 F.2d 62, 64 (11th Cir. 1988)). In Perry, summarizing prior decisions, the Supreme Court stated, "Where the 'indicators of a [witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion, the identification should be suppressed. . . . Otherwise, the evidence (if

---

[4]Although not clear, the court will assume that Defendant contests both the admission of out-of-court and in-court identifications.

13

admissible in all other respects) should be submitted to the jury." 132 S. Ct. at 725 (citation omitted); and see United States v. Walls, 237 Fed. Appx. 599, 602 (11th Cir. 2007) (Unless a court finds that there is a very substantial likelihood of irreparable misidentification, "arguments about the accuracy of the identification [go] to the weight of the testimony, not its admissibility.") (citing Manson, 97 S. Ct. at 2254). As the Supreme Court explained, "under our adversary system of justice, cross-examination has always been considered a most effective way to ascertain truth." Watkins v. Sowders, 101 S. Ct. 654, 659 (1981).

And, absent Defendant making the initial showing of an unnecessary and unduly suggestive procedure, the court is not required to hold an evidentiary hearing to screen admission of an out-of-court identification or before allowing an in-court identification. "[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." Perry, 132 S. Ct. at 730; and see United States v. Whatley, 719 F.3d 1206, 1216 (11th Cir. 2013) (same). When a defendant's motion "does not present any basis for the court to conclude that the identification procedure was in any way suggestive[,]" the court is not required to hold a hearing outside the presence of the

14

jury "'whenever a defendant challenges the admissibility of a witness's identification.'" United States v. Vazquez-Velazquez, 2012 WL 917845, at *10 (N.D. Ga. February 23, 2012) (citation omitted), adopted by 2012 WL 912787 (N.D. Ga. March 16, 2012); and see Mustafa, 2012 WL 1904595, at *5 ("The Constitution does not impose a *per se* rule requiring an evidentiary hearing in every case of a claimed improper identification.") (citing, *inter alia*, United States v. Smith, 546 F.2d 1275, 1279-80 (5th Cir. 1977) ("holding that '[a]n evidentiary hearing is not required where none of the critical facts are in dispute and the facts as alleged by the defendant if true would not justify the relief requested'")).

Based on the record and Defendant's allegations in the motion to suppress, the court finds that Defendant has not met his burden of demonstrating that the government utilized an unnecessary and unduly suggestive identification procedure in this case.  First, Defendant, as noted, does not challenge the use of the photographs downloaded from the internet and displayed to the witness. [Doc. 58]. The photographs displayed to the witness in this case were (1) three African-American males, (2) five African-American males, and (3) three African-American males. [Doc.

15

58, Exhibit B].[5] Defendant states that the witness was "asked to look at all of the individuals in the photographs and identify anyone she recognized." [Doc. 58 at 1]. She then made notations on the photographs and initialed the identifications she made. [Id.]. The facts as alleged by Defendant do not support a finding of undue suggestiveness, and the photographs shown to the witness are not in and of themselves unduly suggestive. Additionally, courts considering the use of similar photographic arrays following the same procedures have found that the identification procedure was not unduly suggestive. See, e.g., United States v. Smith, 459 F.3d 1276, 1294 (11th Cir. 2006) (finding identification procedure wherein officers showed witness several naked photographs depicting the witness, the defendant and other females and "only asked whether she was able to identify anyone in any of the pictures" was not impermissibly suggestive); United States v. Rojas-Coyotl, 2014 WL 1908674, at **12-13 (N.D. Ga. May 13, 2014) (finding that showing witness five photographs without any suggestion as to who was depicted in the photographs was not unduly suggestive) (citing, *inter alia*, United States v. Antoine, 2012 WL 3765173, at *9 (W.D. Pa. August 30, 2012) (finding that it was not unduly suggestive for the officer

---

[5]The witness was also shown (4) a photograph of the pool located at a condominium and (5) a condominium kitchen, both associated with the alleged criminal conduct. [Id.].

to show a witness "'a number of photographs, one at a time, and [to ask] him whether he knew any of the individuals in the photograph'")); Henry, 939 F. Supp. 2d at 1291, 1293 (finding that the defendant did not satisfy "his burden to demonstrate that the manner in which the identifications were made[,]" that is, showing him a collection of photographs "of persons and places relevant to the investigation[,]" was unduly suggestive); United States v. Sarras, 2007 WL 3231797, at **9-10 (M.D. Fla. October 30, 2007) (finding that procedure of showing witness a series of photographs downloaded from the defendant's computer and asking her "if she was able to recognize anything from the pictures" was not unduly suggestive).

And the basis for Defendant seeking an evidentiary hearing, his misunderstanding about when the series of photographs shown to the witness were downloaded from the internet and confusing those photographs, which did not include the Facebook text accompanying the photographs, with the un-redacted photographs later downloaded from the internet [Doc. 58], is simply insufficient to meet his burden to demonstrate that the identification procedure was unnecessary and unduly suggestive. As Defendant noted in his supplemental motion to suppress, the answer to his inquiry as to how the witness could be shown photographs on August 6 which were not downloaded until August 8 is "easily explained" by simply examining the

17

two sets of exhibits and by the Government's unchallenged explanation. [Doc. 58, Exhibits A and B; Doc. 62 at 6-7]. The witness was not shown the un-redacted photographs downloaded on August 8, 2013.

As stated previously, if a defendant does not establish that an identification procedure is unduly and unnecessarily suggestive, the court is not required to conduct an inquiry - or a judicial screening - to determine whether the witness' identification is otherwise reliable by applying the Biggers' factors. See Perry, 132 S. Ct. at 728 ("The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness."). Because Defendant has not shown that the photographic arrays, as presented to the witness, were unnecessarily and unduly suggestive, the court's inquiry is at an end, and the court will not consider whether the witness' identification is otherwise reliable.[6] See

---

[6]The court, however, notes that the unchallenged information provided by the Government, in support of finding the witness' identification of Defendant in the photographs shown to her was reliable, demonstrates that her out-of-court identification was reliable and that there is little risk of a mis-identification at trial. [Doc. 62 at 11-13]. The witness, apparently JV #2 identified in the indictment, was very familiar with Defendant having spent a month in his presence while he used her for prostitution. She accurately described Defendant and the location where she was staying, the condominium depicted in two of the photographs, prior to viewing the photographs, including describing the "RNF" pendant that Defendant is wearing in the

18

Williams, 826 F.2d at 1021 (if the identification procedure is not unduly suggestive, "that ends the inquiry"); United States v. Hutchinson, 2013 WL 3938541, at *21 n.32 (N.D. Ga. July 30, 2013) ("Because the photographic arrays are not constitutionally suggestive, the inquiry ends there. . . . Accordingly, the undersigned will not further evaluate the reliability of [the witnesses'] out-of-court identifications" and, likewise, "there is no 'substantial risk of irreparable misidentification at trial' resulting from the witnesses' exposure to those arrays.") (citation omitted).

**II. Conclusion**

For the foregoing reasons, the court **RECOMMENDS** that Defendant's motions [Docs. 53 and 58] to suppress identification testimony and for an evidentiary hearing be **DENIED**.

## Conclusion

For the foregoing reasons and based on the cited legal authority, the court **RECOMMENDS** that Defendant's motion [Doc. 51] to dismiss and motions [Docs. 53 and 58] to suppress identification testimony be **DENIED**.

---

photographs. [Id. at 4-6].

19

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial as to Defendants Isaiah Jernigan, Marie St. Vil, and Brianne Marcelin.[7]

**SO RECOMMENDED AND ORDERED** this 2nd day of March, 2015.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[7]As stated *supra* at 3, Defendant Darren Williamson is a fugitive. Defendant Marie St. Vil withdrew her motions [see Doc. 63], and Defendant Brianne Marcelin filed no motions.